IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Kevin C. Stacy,           )
    Plaintiff,         )
                       )
v.                        )   1:10cv1024 (LMB/IDD)
                       )
Lt. Jamie L. Drake,       )
    Defendant.         )

## MEMORANDUM OPINION

Kevin C. Stacy was a Virginia inmate when he filed this pro se civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he suffered excessive force and retaliation during his incarceration at Sussex I State Prison ("Sussex I").[1] The matter is presently before the Court on the Motion for Summary Judgment of the sole defendant, Lt. Jamie L. Drake. Defendant submitted a memorandum of law with several exhibits in support of his position, and provided plaintiff with notice and an opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On September 21, 2011, plaintiff filed an unsworn statement in response to defendant's Motion. For the reasons which follow, defendant's Motion for Summary Judgment will be granted, and summary final judgment will be entered in his favor.

### I. Background

The following material facts are uncontested. On January 27, 2010, during the morning feeding, plaintiff placed his arm through the tray slot of his cell, 4C-10, and stated that he would not move his arm until the hot water in his cell was fixed. Def. Ex. I, Affidavit of Officer D.

---

[1] During the pendency of the action, plaintiff notified the Court that he is now residing at a private address in Norfolk.

Beale (hereinafter "Beale Aff."), ¶ 4. Officer Beale told plaintiff that the maintenance department was aware of the problem and would come to fix it when they could, and plaintiff responded by sticking a plastic spoon into the keyhole of the tray slot and breaking it off in the keyhole. Id. Officer Beale charged plaintiff with the disciplinary infraction of tampering with a security device. Id.

Later that morning, at around 10:30, Officer Beale observed plaintiff scratching the window of his cell door from top to bottom with an object, so visibility from the pod into the cell was blocked. Beale Aff., ¶ 5. As a result, Officer Beale charged plaintiff with the disciplinary offense of intentionally destroying state property. Id.

At 12:50 p.m. on the same day, during the lunch feeding, Officer Beale opened the door to plaintiff's cell, and plaintiff threw an empty tray out of the cell past Beale's head and onto the pod floor. Beale Aff. ¶ 6. Officer Beale charged plaintiff with the disciplinary infraction of intentionally throwing an object.

At about 3:25 that afternoon, during pod recreation, Officer Everett and defendant Lt. Drake responded to plaintiff's cell and found that plaintiff had intentionally broken the sprinkler head in the cell. Def. Ex.II, Affidavit of Lt. Drake (hereinafter "Drake Aff."), ¶ 4. Lt. Drake instructed plaintiff to back up to the tray slot to be handcuffed; plaintiff complied and was removed from the cell. Id. As Lt. Drake and Officer Everett were escorting plaintiff to the segregation unit, plaintiff became disruptive toward them, which caused the officers to place plaintiff on the floor until he stopped resisting and leg irons could be applied. Id. When the leg irons were in place plaintiff was picked up to be escorted to the shower, and at that time Lt. Drake noticed blood on the floor but did not know its source. Id. Plaintiff was taken to the

shower, and Lt. Drake notified medical personnel, who instructed that plaintiff be brought to the medical department. Drake Aff., ¶ 5.

Stacy's medical examination revealed that he had suffered a laceration to his right brow, 1 cm long by 1.5 cm wide. Def. Ex.IV, Affidavit of Dr. P. Warren (hereinafter "Warren Aff."), ¶ 4. The area was cleansed and anesthetized, and the cut was closed with four sutures. Triple antibiotic gauze was applied, and the sutures were to be removed in five days. Id. Plaintiff tolerated the procedure well. Id. In addition, plaintiff was prescribed Motion 400mg by mouth three times a day for five days, he received a tetanus shot, and a skull series x-ray was ordered to rule out structural abnormalities. Id. Aside from the cut on his forehead, plaintiff was uninjured: his pulse was 98% on room air, his blood pressure was 130/84, his pupils were active, round and reactive to light, and his extra-ocular movement was intact. Id.

Defendant Lt. Drake attests that he did not assault or use excessive force against plaintiff, nor did he slam plaintiff's face against the cell door. Drake Aff., ¶ 6. Instead, he used the minimum amount of force necessary to control plaintiff's disruptive behavior while plaintiff was being escorted to segregation. Id. Drake denies making any comment to plaintiff that the events in questions were payback for the early 1990's at Greensville Correctional Center ("GCC"). Drake Aff. ¶ 6. Drake worked at GCC from August, 1995 through June, 1998 and does not recall having any contact with plaintiff during that period, id.; the records of the Virginia Department of Corrections ("VDOC") reflect that plaintiff was housed at GCC from August, 1991 until January, 1993. Resp. Ex. III, Affidavit of Cindy Collins, Manager for VDOC's Central Criminal Records.

In response to defendant's Motion for Summary Judgment, plaintiff filed a statement

which is neither sworn nor notarized. In it, plaintiff states that he was "slammed" against a "steel rail door" by Lt. Drake while his hands were handcuffed behind him. There was a "trail" of blood coming from plaintiff's eye, and plaintiff denies acting "in any violent way once [his] cell door was opened." Plaintiff was forced to walk with his hands lifted into the air until he was "slammed again" to be restrained with leg irons. Plaintiff concludes by asking the Court to bear with him because his eyesight is getting worse since he suffers from "histoplasmois, a rare form of eye cancer." Dkt. 33.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material.

"[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

As to plaintiff's principal claim that he was subjected to the use of excessive force by Lt. Drake, the "core judicial inquiry" in analyzing an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The factors to be considered in such a determination are the need for the application of force, the relationship between that need and the amount of force that was used, the threat reasonably perceived by the prison officials, efforts to temper the severity of a forceful response, and the extent of injury suffered by the inmate. Whitley, 475 U.S. at 321. The extent of injury suffered by the inmate thus is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, id., and also because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal).

5

Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79.

Here, the uncontested facts show that defendant Lt. Drake did not violate plaintiff's Eighth Amendment rights. On the day the incident occurred, it is clear that plaintiff was behaving an undisciplined manner: at various times he stuck his arm through the tray slot in his cell, broke a plastic spoon off in the tray slot keyhole, scratched his cell door window to obstruct visibility into the cell, and broke the head of the cell's sprinkler. Plaintiff complied with Lt. Drake while being handcuffed and removed from the cell, but he became disruptive while being escorted to the segregation unit, and he was taken to the ground until he stopped resisting and leg irons could be applied. Plaintiff's unsworn and unnotarized statement that Lt. Drake "slammed" him twice during this process is legally insufficient to create a genuine dispute as to these material facts. See Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it.")

Moreover, even if the Court were to take into consideration plaintiff's unsworn statement that Lt. Drake "slammed" him against a "steel rail door" and then "slammed" him to the floor before applying the leg irons, plaintiff does not offer anything to contradict the affidavit of Dr. Warren that the extent of injury plaintiff suffered as a result of the incident was a one-centimeter cut on his forehead. While the relatively minor nature of this injury is not solely determinative of

whether plaintiff suffered an application of excessive force, Wilkins, 130 S.Ct. at 1178, it strongly suggests that the quantum of force Lt. Drake used to restrain plaintiff was not excessive. Rather, the totality of the facts reflected in the defendant's exhibits makes it evident that Lt. Drake applied force to plaintiff in a good faith effort to restore discipline rather than maliciously and sadistically for the purpose of causing harm, cf. Whitley, 475 U.S. at 320 - 21, and that he did not do so obdurately or wantonly. Id. at 319. Because no facts material to plaintiff's excessive force claim are genuinely disputed and the evidence as a whole could not lead a rational factfinder to rule in his favor on that issue, defendant is entitled to the summary judgment he seeks. Matsushita, 475 U.S. at 587.

In addition, at this juncture plaintiff's claim of retaliation is completely unsupported. To state a claim for retaliation, an inmate must allege facts demonstrating that his exercise of a constitutional right was a substantial factor motivating the retaliation. See Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). Additionally, he must show a sufficiently adverse impact on a constitutional right as a result of the retaliation. ACLU or Maryland, Inc. v. Wicomico, 999 F.2d 780, 785 (4th Cir. 1993). Finally, he must demonstrate that the prison official's actions did not advance legitimate penological objectives. Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D.Va. 1997) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). In this case, plaintiff has come forward with no facts to support any of these requirements, nor did he file anything to rebut the affidavit of the VDOC official which states that plaintiff was not incarcerated at Greensville Correctional Center during the time Lt. Drake was employed there. Under these circumstances, summary judgment in defendant's favor is also appropriate on plaintiff's claim of retaliation. Matsushita, 475 U.S. at 587.

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and final judgment will be entered in his favor. An appropriate Order and Judgment shall issue.

Entered this 9th day of December 2011.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge